UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LESLIEANNE FOSTER,

                                    NO. CIV. S-08-1691 LKK/KJM

        Plaintiff,

    v.

                                      <u>O R D E R</u>

BEAR STEARNS RESIDENTIAL
MORTGAGE CORPORATION, EMC
MORTGAGE CORPORATION, FIRST
GLOBAL PACIFIC FUNDING and
DOES 1-10,

        Defendants.

_____/

      Plaintiff Leslianne Foster alleges that defendants, various financial institutions, violated state and federal laws by failing to disclose the material terms of plaintiff's home loan transactions. The loans were originated by Bear Stearns Residential Mortgage Corporation ("Bear Stearns") and are serviced by EMC Mortgage Corporation ("EMC"). A third defendant, First Global Pacific Funding, has not stated an appearance and is not party to the present motions to dismiss.

      Pending before the court is Bear Stearns' and EMC's

1

("defendants") motion to dismiss all claims, except the claim for violation of California's Unfair Competition Law. For the reasons explained below, the motion is granted in part and denied in part.

## I. BACKGROUND[1]

On February 21, 2007, plaintiff entered into two loan transactions to refinance her home. Compl. ¶ 14. The three defendants played separate roles in plaintiff's loans. First Global Pacific Funding allegedly acted as plaintiff's broker, helping her choose and enter into the loans.[2] Bear Stearns acted as the originator of plaintiff's loan, providing the money and thereby owning plaintiff's debt. EMC became involved only after

---

[1] The allegations described herein are taken from the complaint and are taken as true for the purpose of the pending motions only.

[2] Defendants request the court take judicial notice of two deeds of trust which secure loans obtained by plaintiff from Bear Stearns Residential Mortgage Company on the plaintiff's real property at 625 West Street, Woodland, CA 95695. Defendants have provided copies of both deeds of trust as Exhibit A (Loan #17642802) and Exhibit B (Loan #17642810) in support of defendants' Motion to Dismiss.

A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably questioned. Fed. R. Evid. 201(b). A court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed. R. Evid. 210(d).

Here, both of the deeds of trust are public documents, recorded in the Yolo County Recorder's Office, and therefore the court is able to accurately and readily determine their contents in the event of a dispute. Defendants have complied with Federal Rule of Evidence 201(d) by requesting judicial notice and supplying the court with a copy of both deeds of trust.

Therefore, the court takes judicial notice of the deeds of trust in Exhibit A and Exhibit B.

the loan transaction was complete, stepping in as the servicer of the loan, managing the administration of the loan on behalf of Bear Stearns.[3]

Plaintiff's two loans consisted of a first mortgage in the amount of $320,000 and a second mortgage in the amount of $25,000. Id. The first loan was an adjustable rate mortgage, with terms set forth in the document titled "Adjustable Rate Note." Mot. to Dismiss, Ex. A. Plaintiff's second loan was a fixed rate loan, the terms of which are set forth in the document titled "Note." Id., Ex. B. Plaintiff's loans are allegedly subject to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA") and its implementing regulations, 12 C.F.R. Part 226 ("Reg. Z"). Compl. at ¶ 16.[4]

During initiation of the loans, TILA allegedly obligated Bear Stearns (as the originator) to make certain disclosures, including the actual annual percentage rate ("APR"), the "amount financed," and any "finance charge[s]" associated with the loans. Id. at ¶¶ 15, 23, 51-52, 155-156, 166. Bear Stearns provided plaintiff with Truth in Lending Disclosure Statements ("TILDS"), but plaintiff

---

[3] By order of November 20, 2008, the court granted plaintiff 90 days to propound discovery as to the relationships between defendants, including defendants' corporate structures, their possible ownership of each other, and the part each played in the events at issue here. Plaintiff elected not to propound any such discovery. This summary of the parties' roles is therefore derived from the complaint, exhibits, and undisputed portions of the parties' papers.

[4] This "allegation" is a legal conclusion, which the court is not obliged to accept as true. It is included here to provide context for the following allegations.

alleges that these statements failed to make the above three mandatory disclosures. Id. As to the third disclosure in particular, plaintiff alleges that defendants fraudulently concealed or omitted a finance charge or yield spread premium ("YSP") paid in connection with plaintiff's loans. Id. at ¶¶ 26-27.[5] However, the disclosures do note a "yield spread premium" paid to First Global Pacific Funding. Mot. to Dismiss, Ex. F, p.4, Ex. G, p.4. Plaintiff alleges that, absent these referral fees, plaintiff would have qualified for a lower interest rate. Id. at ¶¶ 107, 118. Additionally, plaintiff alleges defendants intentionally failed to disclose these terms in order to induce plaintiff's acceptance of the loan transactions. Id. at ¶¶ 105-107, 123-127.

As part of these initial transactions, on February 23, 2007, plaintiff signed and dated an original Notice of Right to Cancel, which acknowledges receipt of two copies of the Notice of Right to Cancel. Id. at ¶¶ 24, 42. The Notice of Right to Cancel identifies the three-day period in which the borrower may rescind the loan transaction. Id. at 16. Plaintiff admits that she received two copies the Right to Cancel Notice, but she alleges that these copies did not include either her signature or the operative dates for rescission of the loans, in violation of TILA.

---

[5] A "YSP is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate." Schuetz v. Banc One Mort. Corp., 292 F.3d 1004, 1007 (9th Cir. 2002). Thus, a YSP is a commission paid to brokers whose customers enter particularly lucrative loans.

<u>Id.</u> at ¶ 23.

On February 28, 2007, the right to service plaintiff's loans was acquired by EMC. Exhibit C in support of Complaint. Plaintiff alleges that EMC is the servicer of her loan. Compl. ¶ 11. Plaintiff also generally alleges that EMC is a "debt collector" under both 15 U.S.C. 1692 of the Fair Debt Collections Practice Act ("FDCPA") as well as California Civil Code § 1788 <u>et</u> <u>seq</u>. (also known as the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). <u>Id.</u> at ¶¶ 59, 60.

On June 1, 2008 (fifteen months later) plaintiff sent a letter to EMC, stating three things. First, plaintiff stated that she was exercising her right under the FDCPA to terminate all collection calls. <u>Id.</u> at ¶ 20, Ex. A. Plaintiff alleges that she gave EMC until June 12, 2008, to contact her regarding a request for settlement. <u>Id.</u> After June 12, 2008, plaintiff alleges that EMC violated the FDCPA by repeatedly calling her regarding her cessation of loan payments. <u>Id.</u> at ¶ 21, 62-65, Ex. B. Second, the June 1, 2008, letter requested that EMC identify either the owner of the loan or the master servicer, pursuant to EMC's obligation under TILA, 15 U.S.C. § 1641(f)(2). Plaintiff alleges that defendant EMC violated this obligation by refusing to provide the name, address, or telephone number of either the true owner of the loan or the master servicer. <u>Id.</u> at ¶ 54, 110. Finally, the letter notified EMC that plaintiff was exercising her right to rescind under TILA. <u>Id.</u> at ¶ 20, Ex. A. Plaintiff alleged that she was able to exercise this right at that time because she had

5

not received a proper Notice of Right to Cancel.  <u>Id.</u>

Pending before the court is the defendants' motion to dismiss the complaint.  Oral argument was heard on this motion on November 17, 2008.  Plaintiff did not oppose dismissal of the third, fourth, fifth, and twelfth causes of action as to defendants Bear Stearns and EMC only.  By an order of November 20, 2008, the court dismissed those claims, and granted plaintiff 90 days to propound discovery regarding defendants' relationships with one another, after which time plaintiff could either submit an amended complaint or allow the matter to stand submitted as to the remaining claims. Plaintiff has not filed an amended complaint.  Accordingly, the court now addresses defendants' remaining arguments for dismissal.

## II. STANDARD FOR DISMISSAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 569 (2007).  While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 555.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief.  <u>Id.</u> at 555 n.3.  Though such assertions may provide a defendant with the requisite "fair notice" of the

nature of a plaintiff's claim, the Court opined that only

factual allegations can clarify the "grounds" on which that

claim rests. Id. "The pleading must contain something more. .

. than . . . a statement of facts that merely creates a

suspicion [of] a legally cognizable right of action." Id. at

555, quoting 5 C. Wright & A. Miller, Federal Practice and

Procedure, § 1216, pp. 235-36 (3d ed. 2004).[6]

On a motion to dismiss, the allegations of the complaint

must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322

(1972). The court is bound to give the plaintiff the benefit of

every reasonable inference to be drawn from the "well-pleaded"

allegations of the complaint. See Retail Clerks Int'l Ass'n v.

Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the

Complaint is construed favorably to the pleader. See Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the

court does not accept as true unreasonable inferences or

conclusory legal allegations cast in the form of factual

allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th

Cir. 1981).

### III. ANALYSIS

Plaintiff's complaint advances twelve claims. The third,

---

[6] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 550 U.S. at 560.

fourth, fifth, and twelfth claims have already been dismissed, and defendants do not move to dismiss the eighth claim. Plaintiff's remaining claims rely on three general theories, packaged in a variety of causes of action.

First, plaintiff alleges that at the time the loan was negotiated and consummated, she was informed (through some document) that she would be charged one rate, but that once the loan was complete, she was charged a higher rate. Plaintiff's ninth and tenth causes of action argue that the earlier rate is binding, and that by charging a higher rate, defendants breached either a contract or the implied covenant of good faith and fair dealing.

Second, plaintiff alleges that at the time the loan was consummated, defendants failed to make disclosures required by TILA and RESPA. Under this theory, plaintiff argues that if the rate actually charged was the correct rate (such that there was no breach of contract), defendants' earlier communications failed to disclose that rate. Plaintiff also alleges that at this earlier time defendants violated their obligation to disclose plaintiff's right to rescind. Portions of plaintiff's first, sixth, seventh, and eleventh causes of action are based on these claims.

Third, plaintiff alleges that when she attempted to exercise her extended right to rescind this year, defendants violated their obligation to disclose information necessary to the exercise of that right. Portions of all of plaintiff's

first, second, and sixth causes of action invoke this theory.

Informed by this background overview of plaintiff's rambling complaint, the court discusses plaintiff's individual claims in turn.

**A.    First Cause of Action: Truth in Lending Act**

Plaintiff argues three bases for TILA liability: that defendants failed to disclose the financial terms of the loans (15 U.S.C. §§ 1638(a)(3)-(4), 12 C.F.R. §§ 226.18(d)-(e)), that defendants failed to properly disclose plaintiff's right to rescind (15 U.S.C. § 1635(a)), and that defendants violated their obligation to facilitate plaintiff's exercise of the right to rescind (§§ 1635(b), 1641(f)(2)).  These claims are brought under the civil right of action provided by TILA, 15 U.S.C. § 1640.  Defendants' present motion addresses only the first theory of liability; it does not address plaintiff's allegations of TILA violations related to her attempted exercise of recision rights.  As to this first theory, defendants argue that TILA imposed no obligations on EMC relating to disclosures at consummation and that plaintiff cannot seek damages for violations at disclosure because TILA imposes a one year statute of limitations.

**1.    EMC's Liability for Initial Disclosures**

TILA mandates a range of initial disclosures for consumer credit transactions other than "open ended credit plan[s]." For transactions such as that in issue here, "the creditor shall disclose . . . the finance charge," plaintiff's recision rights,

and certain other information.  15 U.S.C. §§ 1638(a)(3)-(4).

Defendants argue that this obligation is imposed only on "creditors" or certain "assignees," and that EMC falls outside the statutory definitions of these terms.  Plaintiff implicitly concedes that EMC is not a creditor.  TILA defines a creditor as "a person who both (1) regularly extends . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ." 15 U.S.C. § 1602(f).  See also Cetto v. LaSalle Bank Nat'l Ass'n, 518 F.3d 263, 270 (4th Cir. 2008).  Plaintiff has not alleged that EMC was the person to whom the debt was initially payable.

As to "assignees," TILA explicitly excludes servicers in EMC's position from the definition of "assignees."  15 U.S.C. § 1641(f).  To be liable as an assignee, the servicer must own the obligation, and the servicer's ownership must not be based on assignment from another creditor made solely for administrative convenience in servicing the obligation.  §§ 1641(f)(1)-(2); see also Hubbard v. Ameriquest Mortg. Co., 2008 U.S. Dist. LEXIS 75799, *9-*10 (N.D. Ill. 2008).  Although plaintiff disputes some of EMC's statements as to EMC's role in the loan, plaintiff has not alleged that EMC owns the obligation, or that EMC's ownership, if any, is not merely for administrative convenience.

Therefore, plaintiff's TILA claim against EMC is dismissed insofar as this claim relating to the initial disclosures.

**2.   TILA's Statute of Limitations for Claims for Damages**

Although defendants do not dispute that Bear Stearns was a "creditor" of the loan, and thereby obligated to make initial disclosures, defendants argue that plaintiff is no longer able to seek damages on this claim. Plaintiff's claim for damages relating to initial disclosures arises under 15 U.S.C. § 1640. That section provides a statute of limitations of "one year from the date of the occurrence of the violation." § 1640(e). The disclosures were allegedly obligated to be made in February of 2007, and plaintiff filed this complaint in July of 2008.

Plaintiff's complaint recognizes this one year limit, but argues that pursuant to section 1635(g), the limitations period was "revived." Section 1635 applies to the exercise of recision rights; specifically, section 1635(a) provides a statutory right to rescind a transaction in certain situations. Section 1635(g) provides that "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 130 [15 U.S.C. § 1640] for violations of this title [15 U.S.C. §§ 1601 et seq.] not relating to the right to rescind." Plaintiff alleges that defendants violated TILA's requirements relating to plaintiff's attempt to rescind (in June 2008), and that this violation "revived" the statute of limitation, because, under section 1635(g), plaintiff's separate claims for damages may tag along.

Plaintiff misconstrues section 1635(g). In the sole case cited by plaintiff on this issue, the First Circuit held that 1635(g) merely allows a plaintiff to seek rescission and damages

in the same action.  <u>Belini v. Wash. Mut. Bank, FA</u>, 412 F.3d 17,

24 (1st Cir. 2005).  The <u>Belini</u> plaintiffs sought damages for

conduct relating to the request to rescind, and sued within one

year of that conduct.  Unlike the current plaintiff, they did

not argue that defendants' conduct at the time of rescission

revived the statute of limitations for claims arising out of

earlier conduct.  <u>Belini</u> therefore does not support plaintiff's

revival arguments, and said nothing about the statute of

limitations.  Most cases that have actually considered

plaintiff's argument have rejected it.  <u>Brown v. Nationscredit</u>

<u>Fin. Servs. Corp.</u>, 349 F. Supp. 2d 1134, 1137-38 (N.D. Ill.

2005), <u>see also</u> <u>Cazares v. Household Fin. Corp.</u>, 2005 U.S. Dist.

LEXIS 39222 (C.D. Cal. July 26, 2005), <u>contra</u> <u>McIntosh v. Irwin</u>

<u>Union Bank & Trust Co.</u>, 215 F.R.D. 26, 30 (D. Mass. 2003).

Section 1635(g) provides that multiple remedies and claims may

be joined into a single action--it does not provide any

extension or revival of the statute of limitations provided in

section 1640.

The court further concludes that plaintiff has not alleged

facts supporting a finding of equitable estoppel or tolling of

section 1640's one year limitations period.  Although the

complaint acknowledges the statute of limitations problem, it

does not argue for estoppel or tolling, nor does it allege facts

that would support such an argument.  Defendants' motion

attempts to pro-actively refute these arguments, but plaintiff's

only response was to state that equitable tolling was "properly

12

pled in the complaint, [but] serves little point at this juncture" because of plaintiff's revival argument. Thus, although plaintiff was put on notice of the statute of limitations issue, and given an opportunity to argue for equitable tolling or estoppel, plaintiff has chosen not to do so.

Under these circumstances, the court grants defendants' motion to dismiss plaintiff's TILA claim for damages arising out of the initial disclosures, because this claim is barred by TILA's statute of limitations.

**B.    Second Cause of Action: Fair Debt Collection Practices Act**

Plaintiff's second cause of action is brought only against defendant EMC. Plaintiff alleges that EMC's phone calls after June 12, 2008 violated both the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 <u>et</u> <u>seq.</u>, and California's Rosenthal Act, Cal. Civ. Code § 1788 <u>et</u> <u>seq.</u>, which is largely analogous. Defendant's present motion does not challenge plaintiff's Rosenthal Act claim.

The FDCPA only regulates the activities of "debt collectors." <u>See, e.g.</u>, <u>Rowe v. Educ. Credit Mgmt. Corp.</u>, ___ F.3d ___, 2009 U.S. App. LEXIS 5554 (9th Cir. Mar. 18, 2009). EMC argues that it does not meet the statutory definition of a debt collector, and thus bears no obligation under FDCPA.

A "debt collector" is generally "any person . . . who regularly collects . . . , directly or indirectly, debts owed or due . . . to another," or who engages in "any business the

principal purpose of which is the collection of any debts." 15 U.S.C. 1692a(6). EMC is alleged to collect payments on the debt plaintiff owes to Bear Stearns. However, the statutory definition specifically excludes those who collect debts "owed [to] another . . . which was not in default at the time it was obtained by such person . . ." 15 U.S.C. 1692a(6)(F)(iii). The Senate Report on the Fair Debt Collection Practices Act explains that

> The committee does not intend the definition [of a debt collector] to cover . . . the collection of debts such as mortgages and student loans, by persons that originated such loans; mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing.

S. Rep. No. 95-382 (1977), reprinted in 1977 U.S.C.C.A.N 1695. See also Wadlington v. Credit Acceptance Corp., 76 F.3d 103 (6th Cir. 1996) (no FDCPA claim against a loan servicer because it acquired contracts at the time of sale and before default); Whitaker v. Ameritech Corp., 129 F.3d 952 (7th Cir. 1997) (same), Thomson v. Prof'l Foreclosure Corp., 2000 U.S. Dist. LEXIS 22564, *21-*22 (E.D. Wash. 2000). In the present case, plaintiff does not allege that Bear Stearns acquired plaintiff's loans while they were in default. Therefore EMC is not a "debt collector" under the FDCPA. Plaintiff's claim against EMC under the FDCPA is dismissed.

**C.    Sixth and Seventh Causes of Action: Fraudulent Concealment and Omission**

14

Plaintiff's sixth and seventh claims are for fraudulent concealment and fraudulent omission, respectively. These claims allege numerous specific violations of defendants' duties to disclose information. Defendants move for dismissal of these claims on two grounds. For some of plaintiff's claims, defendants argue that plaintiff's allegations, even if true, do not show a violation of a duty to disclose. As to the remaining alleged violations, defendants argue that the fraudulent concealment and omission claims are preempted by federal law.[7]

To prevail on a claim for fraudulent concealment or omission, plaintiff must show, inter alia, that defendants failed to disclose information that they had a specific duty to disclose. Cal. Civ. Code §§ 1709-1710, <u>Lingsch v. Savage</u>, 213 Cal. App. 2d 729, 735 (1963). In those of plaintiff's claims that actually allege such a duty, the duty derives from TILA and RESPA.[8]

**1.   Disclosures Mandated by TILA and RESPA[9]**

---

[7] It is unclear whether defendants argue that only the remaining aspects of the sixth and seventh claims are preempted, or that all of the sixth and seventh claims are preempted, such that alternative grounds for dismissal exist for some of plaintiff's theories of liability. Because the court concludes that TILA does not preempt any aspect of these claims, the distinction is immaterial.

[8] It is unclear whether plaintiff's complaint makes further allegations of fraud that are not grounded in these (or any other) duties, but any such allegations necessarily fail to state a claim.

[9] As pertains to this claim, RESPA and TILA impose unified disclosure obligations. <u>See</u> 12 U.S.C. § 2601; Act of Sept. 30, 1996, P.L. 104-208, Div A, Title II, Subtitle A, § 2101, 110 Stat. 3009-398.

Plaintiff's first allegation, made in both the sixth claim and seventh claims, is that defendant failed to make disclosures mandated by the Real Estate Settlement Procedures Act (RESPA). Compl. ¶¶ 105-07, 123. RESPA was passed to ensure that home buyers and sellers received notice of settlement costs well in advance of the consummation of the loan transactions. 12 U.S.C. § 2601. In real estate sales, RESPA requires that referral fees be disclosed to the party being referred, and that the referred party receive "a written estimate of the charge or range of charges generally made by the provider to which the person is referred." 12 U.S.C. § 2607(c)(4).

Plaintiff's sixth and seventh claims contain distinct forms of this allegation. In her sixth claim, she alleges that defendants violated this disclosure obligation by "represent[ing] that no [] compensation other than what was listed on the HUD-1 Settlement Statement would be charged" when in fact additional payments were made by EMC to Bear Stearns and First Global Funding. Compl. ¶ 105. Plaintiff further alleges that the cost of these payments was passed on to her, id. at ¶ 107, and that defendants "intentionally suppressed and concealed" these payments, id. at ¶ 106. In her seventh claim, plaintiff alleges that defendants violated RESPA by failing to disclose the Yield Spread Premium, which (as discussed above) is a type of referral fee. Compl. ¶ 123; Defendant's Mot. to Dismiss, 8 n.11.

Defendants agree that RESPA obligates them to disclose

16

referral fees on HUD-1 Settlement Statements.  However,
defendants contend that they did disclose these fees, as
evidenced by the HUD-1 Settlement Statements, attached as
Exhibits F and G.  These exhibits disclose that EMC paid "yield
spread premium" fees to First Global Pacific Funding.  Mot. to
Dismiss, Ex. F, p.4, Ex. G, p.4.

Defendants' exhibits refute plaintiff's allegation that
defendants failed to disclose the Yield Spread Premium.  Compl.
¶ 123.  However, defendants' argument does not respond to
plaintiff's allegation that defendants made additional payments
to one another beyond the YSP (or any other payments that were
disclosed), and that the cost these extra payments was passed on
to plaintiff.  Compl. ¶¶ 105-07.  Therefore, defendants' motion
to dismiss this component of plaintiff's sixth claim (fraudulent
concealment of payments other than the YSP) is denied, while
defendants' motion to dismiss this component of plaintiff's
seventh claim (fraudulent omission of the YSP) is granted.

**2.  EMC's Obligation, under TILA, To Identify The Holder
of the Note**

Plaintiff's remaining allegation under her sixth claim is
that EMC is "purposely suppressing and concealing the true
owner/beneficiary [of the debt] to frustrate the remedies of the
Plaintiff."  Compl. ¶¶ 108.  This obligation concerns EMC's
conduct relating to plaintiff's attempt to rescind in 2008, as
opposed to conduct at the origination of the loan in 2007.  As
discussed above, TILA requires a loan servicer to "provide the

obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation" upon the obligor's written request. 15 U.S.C. § 1641(f)(2).[10] Plaintiff submitted such a request on June 1, 2008. Compl. ¶ 111, Ex. A.

EMS argues that it complied with this duty, because EMC identified itself as the master servicer, and therefore had no further obligation to identify the owner of the obligation. However, EMC's response letter does not explicitly identify EMC as the master servicer. Compl., Ex. C. The letter begins by noting "that certain information [plaintiff] requested is proprietary to EMC, and as such, EMC respectfully declines to release this information to [plaintiff]." Id. The letter goes on to identify EMC as the "servicer," but it does not use the term "master servicer," nor does the letter identify the owner of the obligation. Id. Defendant asserts, without discussion, that the letter identifying EMC as a "servicer," without more, satisfied EMC's obligation to identify the "master servicer."

TILA's implementing regulations draw a sharp distinction between "master servicers," who own the right to perform servicing, and "subservicers," who do not, and who instead work on behalf of the master servicer. 24 C.F.R. § 3500.21(a). In light of this distinction, the court holds that EMC, by glossing

_____

[10] Plaintiff cites this section of the U.S. Code, but mistakenly asserts that this section codifies RESPA, rather than TILA.

18

over the response letter's omission of the term "master
servicer," skipped a necessary step in its argument.  Therefore,
defendants' motion to dismiss this portion of plaintiff's sixth
claim is denied.  This disposes of all portions of plaintiff's
sixth claim, and consequently, the motion to dismiss plaintiff's
sixth claim is denied in full.

### 3.    Remaining Disclosures Mandated by TILA

Plaintiff's seventh claim further alleges that defendants
violated their duty to provide plaintiff  two written notices of
her right to cancel and their "duty to provide for accurate
disclosure of the amount financed, finance charge and Annual
Percentage Rate."  Compl. ¶¶ 121-122.  Defendants argue, and
plaintiff does not contest, that these claims are based on
violations of TILA, and that plaintiff is seeking to use state
law claims to circumvent the TILA's statute of limitations and
prohibition on punitive damages.  Defendants further argue that
these claims are preempted by TILA.

Federal statutes can preempt state law in three ways.
Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir.
2008), Bank of Am. v. City and County of S. F., 309 F.3d 551,
558 (9th Cir. 2002).  Specifically:

> First, Congress may preempt state law by so
> stating in express terms.  Second[,]
> preemption may be inferred when federal
> regulation in a particular field is so
> pervasive as to make reasonable the
> inference that Congress left no room for the
> States to supplement it. . . .  Third[,]
> preemption may be implied . . . when
> compliance with both federal and state

19

| | |
|---|---|
| 1 |           regulations is a physical impossibility, or |
| 2 | when state law stands as an obstacle to the accomplishment and execution of the full |
| 3 | purposes and objective of Congress. |

*Silvas*, 514 F.3d at 1004 (quoting <u>Bank of Am.</u>, 309 F.3d at 558

(internal quotation marks and citations omitted)).

      Although there is ordinarily a presumption against finding preemption, this does not apply "when [a] State regulates in an area where there has been a history of significant federal presence." <u>United States v. Locke</u>, 529 U.S. 89, 108 (2000). The Ninth Circuit has found such a federal presence in the field of banking, and in regulation of financing of home loans in particular. <u>Silvas</u>, 514 F.3d at 1004 (citing <u>Bank of Am</u>, 309 F.3d at 558). With this background, the court addresses the three types of preemption.

### a. Explicit Preemption

      Congress can preempt state law by explicitly stating that it intends to do so. <u>Bank of Am.</u>, 309 F.3d at 558. Congress made no such statement in enacting TILA. To the contrary, TILA contains a broad savings clause, stating that TILA should not be given preemptive effect beyond any direct inconsistency with state law:

> [TILA does not] annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this title [15 U.S.C. §§ 1601 <u>et seq</u>.], and then only to the extent of the inconsistency.

15 U.S.C. § 1610.  TILA's implementing regulations further
specify that "A State law is inconsistent [with TILA] if it
requires a creditor to make disclosures or take actions that
contradict the requirements of the Federal law."  12 C.F.R. §
226.28(a)(1).

State laws providing additional remedies for violations of
TILA's disclosure obligations do not require creditors to take
actions contradicting the requirements of federal law.  State
laws can provide increased penalties for failure to make the
disclosures required by TILA.  Monaco v. Bear Stearns
Residential Mortg. Corp., 554 F. Supp. 2d 1034, 1040 (C.D. Cal.
2008), see also In re First Alliance Mortgage Co., 280 B.R. 246,
250-51 (C.D. Cal. 2002).  Similarly, TILA does not preempt
state laws requiring disclosures above and beyond the
disclosures required by TILA.  Black v. Financial Freedom Senior
Funding Corp., 92 Cal. App. 4th 917, 936 (2001).  Therefore,
TILA's savings clause and its implementing regulation make it
clear that TILA has not explicitly preempted state laws that
provide an additional remedy for TILA violations, such as
California's fraud statutes.

> **b.  Preemption Based on Inconsistency**

Federal law can also preempt state law "when compliance
with both federal and state regulations is a physical
impossibility, or when state law stands as an obstacle to the
accomplishment and execution of the full purposes and objective
of Congress."  Bank of Am., 309 F.3d at 558

As discussed above, provision of additional remedies or penalties in no way makes compliance with both federal and state laws impossible. Defendants contend, however, that providing additional remedies frustrates the intent Congress expressed in providing limited remedies. The fact that TILA provides limited remedies may, by itself, suggest that Congress's "purpose and objective" would be frustrated by the provision of additional remedies. However, this court must construe the statute as a whole, and TILA's broad savings clause clearly indicates that Congress's purpose is not frustrated by the continued existence of the state laws that Congress explicitly stated were not preempted. Because the state fraudulent omissions and concealment law is not inconsistent with the obligations imposed by TILA nor with Congress's intent, there is no preemption based on inconsistency.

### c. Field Preemption

Finally, federal law can preempt state law by occupying the field to an extent that leaves no room for state regulation. Because TILA explicitly contemplates the coexistence of federal and state regulation of lenders, the federal regulation cannot be said to be so pervasive as to occupy the entire field of lending regulation. For these reasons, defendants' argument based that TILA preempts the remainder of plaintiff's seventh claim is dismissed.

////

////

1          **d.   The Home Owner's Loan Act**

2          Although the court concludes that plaintiffs' sixth and

3   seventh claims are not preempted by TILA, a recent Ninth Circuit

4   decision noted that TILA's savings clause does not extend to the

5   Home Owner's Loan Act of 1993 ("HOLA"), such that HOLA has a

6   broader preemptive effect than TILA.  <u>Silvas v. E*Trade Mortg.</u>

7   <u>Corp.</u>, 514 F.3d 1001 (9th Cir. 2008); 12 U.S.C. § 1461 <u>et seq.</u>.

8   Because the parties did not brief this issue, the court will not

9   evaluate HOLA's preemptive effect here.

10  **D.   Breach of Contract and Implied Covenant of Good Faith and**

11  **Fair Dealing (Claims 9 and 10)**

12         Plaintiff is unclear as to her theory underlying her ninth

13  and tenth claims.  For example, plaintiff at times appears to

14  argue that the contract was unconscionable because it was one of

15  adhesion, Compl. ¶¶ 154, 162, but plaintiff's other allegations

16  apparently seek to enforce, rather than escape, the contract,

17  Compl. ¶¶ 155, 158.

18         Construing the complaint liberally, plaintiff's ninth cause

19  of action alleges that the Truth In Lending Disclosure

20  Statements (TILDS) were part of the contract, that these TILDS

21  specified one finance charge, and that defendants breached the

22  contract by charging a different finance charge.  Compl. ¶ 157.

23  While plaintiff opposes dismissal of this claim, she concedes

24  that it "lacks sufficient clarity."  Because, by plaintiff's own

25  admission, this claim is insufficient, the court dismisses it

26  with leave to amend.

                                     23

1  Plaintiff's tenth cause of action is even more opaque.

2  Plaintiff generally asserts that "Defendants unfairly interfered

3  with Plaintiff[']s rights to receive the benefits of the

4  contract."  Compl. ¶ 169.  Plaintiff's specific allegations are

5  that defendants violated her right to proper notice of the right

6  to cancel, Compl. ¶ 168; charged her a rate higher than the one

7  contained in the promissory note and TILDS, Compl. ¶ 167; and

8  engaged in fraudulent omissions, Compl. ¶ 172.

9  None of these allegations states a violation of a duty of

10  good faith and fair dealing.  This duty prohibits acts not

11  specifically proscribed by the contract, but "which will have

12  the effect of destroying or injuring the right of the other

13  party to receive the fruits of the contract."  Storek & Storek,

14  Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 54

15  (2002).  Because the duty protects rights created under the

16  contract, "[t]he implied covenant will not apply where no

17  express term exists on which to hinge an implied duty."  Berger

18  v. Home Depot U.S.A., Inc., 476 F.Supp. 2d 1174, 1177 (C.D. Cal.

19  2007)

20  Plaintiff's allegations at most identify conduct that

21  deprived her of rights outside the contract[11] or conduct that

22  breached the contract's express, rather than implied, terms, and

23  which is therefore better characterized as a breach of the

24

25

26  [11] Plaintiff has not alleged that the contract somehow
incorporated her statutory rights.

24

contract than a breach of the duty of good faith.  Therefore, defendants' motion to dismiss the tenth claim is granted.

Defendants additionally argue that elements of plaintiff's tenth claim are preempted by TILA.  As discussed above, TILA does not preempt state law that merely provides additional remedies for violations of TILA's obligations.  Therefore, TILA preemption does not provide an alternate ground for disposing of plaintiff's tenth claim.  For the reasons stated above, the court does not determine whether HOLA preempts any of plaintiff's contract claims.

**E.    Eleventh Claim: Fraud and Deceit**

Plaintiff's eleventh cause of action, brought under Cal. Civ. Code § 1709, solely alleges that "Defendants willfully deceived Plaintiff to induce her to alter and cause financial harm to herself for their own financial gain."  Compl. ¶ 180. The complaint does not otherwise identify when, where, or how the deception occurred.  Defendants argue that this allegation does not satisfy the heightened pleading requirements applicable to allegations of fraud under Fed. R. Civ. P. 9(b).  Plaintiff has not responded to this argument, instead claiming that EMC has lied about being the master servicer, and that this "information" renders "amending this cause of action unnecessary."  Plaintiffs Opposition to Mot. to Dismiss § H.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P., Rule 9(b).  The

Ninth Circuit has held that a pleading of fraud must identify "the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993) (citations omitted). When suing multiple defendants, plaintiff must differentiate among them and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-765 (9th Cir. 2007) (citations omitted). These requirements ensure that defendants are given "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Neubronner, 6 F.3d at 671-672.

Plaintiff's eleventh claim does not make any specific allegations, other than to incorporate by reference all preceding paragraphs in the complaint. The only incorporated allegations potentially showing fraud are in plaintiff's sixth and seventh claims. To the extent that the eleventh claim action relies on those allegations, the eleventh claim is entirely duplicative. To the extent that the eleventh claim is intended to allege any other grounds upon which the defendants may be liable, it fails to aver any of the elements required under Fed. R. Civ. P. 9(b).[12] Plaintiff's eleventh cause of action is therefore dismissed.

---

[12] Defendants have not challenged the sufficiency of the allegations in claims six and seven under Rule 9(b).

**IV. CONCLUSION**

For the reasons above, the court orders:

1.  The defendants' motion to dismiss is GRANTED as to:

    a.  Plaintiff's first claim, to the extent that it seeks to hold EMC liable for conduct occurring at initiation.

    b.  Plaintiff's first claim, to the extent that it seeks damages from defendant Bear Sterns for conduct occurring at initiation.

    c.  Plaintiff's second claim, in so far as it alleges a claim against EMC under 15 U.S.C. § 1692.

    d.  Plaintiff's seventh claim, in so far as it alleges that EMC or Bear Stearns violated a duty to disclose a "yield-spread premium" under RESPA.

    e.  Plaintiff's ninth, tenth, and eleventh claims, solely as to EMC and Bear Stearns.

2.  Defendants motion to dismiss is DENIED as to:

    a.  Plaintiff's sixth claim.

    b.  Plaintiff's seventh claim, in so far as the claim alleges that defendants fraudulently omitted disclosure of the plaintiff's rescission rights and the accurate finance charge, amount financed, and annual percentage rate.

////

////

////

1   3.   Plaintiff is granted 20 days from the date of this

2        order to file an amended complaint.

3   IT IS SO ORDERED.

4   DATED:  April 8, 2009.

5

6

7                              _____
                               LAWRENCE K. KARLTON
8                              SENIOR JUDGE
                               UNITED STATES DISTRICT COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26